May it please the Court, Kevin Benson, Deputy Attorney General, on behalf of the appellant, Ross Miller, Nevada Secretary of State. I would like to reserve two minutes for rebuttal, and Mr. Parrish, the counsel for the intervener, will argue for two minutes at the end of my opening argument. All right. The preliminary injunction in this case was entered in error and must be reversed and vacated because the plaintiffs can show no possibility of success on the merits. And this is because all of their claims are based on the false premise that choosing none of these candidates is exactly the same thing as voting for a candidate. And second, because even if it were considered a vote entitled to constitutional protection, the State has compelling governmental interests in not counting it in a way that it would win and therefore create a vacancy in the seat. Every voter absolutely has a right to vote for the candidate of their choice and to have that vote counted. But every voter also has the right to withhold their vote. And voters do this in a variety of ways. They do it by abstaining, by undervoting, by defacing their ballot, by illegally marking it, or by choosing none of these candidates. In each of these cases, that choice is never counted in determining who wins the election. And the reason it's not counted is because in each of those cases, it doesn't function as a vote. It's not analytically like a vote. And that's the proper legal standard. And when it comes to questions of law, those are reviewed de novo by this Court, even on a preliminary injunction appeal. Whereas the application of the balancing factors may be reviewed for abuse of discretion. Kennedy, as I understand the posture of the case, is that the plaintiffs did not complain about having the none of the above on the ballot. They complain about its lack of being given legal effect. What was the evidence or discussion or argument below about what they wanted to have happened by way of legal effect? My understanding, Your Honor, is that the plaintiffs very much are complaining about it appearing on the ballot. And the reason they complain about it being on the ballot is because it's not counted. And therefore, they argue that it constitutes an illegal option. And but instead of requesting the district court to enter an injunction that the State counted, they ask instead that the district court order it off the ballot altogether in every possible race. And there is tension, obviously, in this case, because it seems that the natural remedy would be to simply order that it be counted. Instead, they ask that it be taken off the ballot altogether. And that is because they are conflating two essentially different issues in this case. One is their argument that it be counted like a vote, that it is exactly the same as voting for a candidate, and it's not counted, and they argue that is why it's illegal. But instead of counting it, they want it off the ballot altogether, and presumably the fear there is that the candidate plaintiffs, the ones who are the Republican nominees or were the Republican nominees for presidential elector, would have a better chance of being elected to that position if they didn't have to compete against this option. Now, of course, if it's not a vote and it's not an illegal option, then there's no interest in having it taken off the ballot. Otherwise, we could have all kinds of minor parties or other parties or other candidates that we don't like, independent candidates, struck from the ballot simply because it's more difficult to win the election. Kennedy, was there any discussion in the district court about the alternative of having it be counted? Yes, there was. And that came down to essentially a question of severability, because this statute is set forth in essentially three subdivisions, and the first subdivision states that none of these candidates has to appear on the ballot. The second subdivision, the first sentence of that subdivision says that it is not counted in a way that allows it to win the election. And then the remainder of the statute goes on to discuss that voters can only, for example, choose it if they don't also choose a candidate, similarly to the how you can't choose more than one candidate. The first sentence of that second subsection is severable from the rest of the statute, because the overall purpose of this statute is to give voters a protest vote, to give them a chance to say they don't like any of these candidates, and rather than simply undervoting the race, to express that in a clear and unambiguous way. That purpose is still served, even if that second – first sentence of the second subsection is stricken. So even if we are required to count it as a vote, it still serves that purpose, and that was the overall purpose that the legislature was trying to achieve in enacting this statute. As I was stating, the proper case or the proper analysis in this case is whether none of these candidates functions as a vote. Whether it's labeled as a vote or not is not dispositive. This case, like in the U.S. v. Classic case, involves where voters mark and cast ballots. But like in the U.S. v. Classic case, that was just the beginning of the analysis. It was not the end, nor was it dispositive. In that case, the Supreme Court went through at great length to examine whether a closed partisan primary election even implicated the Federal right to vote. Ultimately, they did conclude that because it is an integral part of Louisiana's statutes for the general election, meaning you essentially cannot be a candidate on the general election unless you prevail in the primary. But this case is different. Because none of these candidates, as its very name implies, is both a logical and legal opposite of voting for any candidate. It's a conscious decision to withhold one's vote. The Federal right to vote extends only to the right to vote for a Federal candidate and to have that vote counted. There is simply no Federal constitutional right or statutory right nor any fundamental liberty interest in creating a vacancy, which is what would occur if none of these candidates were counted in a way that permits it to win the election. I see that I've gone over my time. And unless Your Honors have any questions, I would be happy to let Mr. Parrish argue. Kennedy. Go ahead. Thank you, Your Honors. John Parrish, appearing on behalf of the intervener, Mr. Kingsley Edwards. As co-counsel stated, in 1975, the Nevada legislature created an unambiguous way, explicitly so, to allow its disaffected electorate to inform the individuals who were being — who were running for these various races of their disquietude. Now, that ability remained unchallenged for nine consecutive presidential elections until June of last year, when the plaintiffs attempted to take away that ability from Mr. Edwards, as well as similarly situated individuals. At the district court level, and as well before Your Honors, we've discussed the various harms and injuries that were to accrue or not accrue, more appropriately, to the individuals in this particular case. The harm to Mr. Edwards is obvious. However, the harms to the plaintiffs, as indicated in the briefing, and as indicated by the district court itself, seem to be much more nebulous. In fact, as we had referenced, the district court specifically asked, perhaps in a rhetorical question, where's the harm? Yet despite district court's belief that there was no harm in this case, the preliminary injunction was still granted in violation of case law and statute before this tribunal. I do see that I am running over a little bit as well, so I will submit it at that juncture. Thank you. Thank you. Good morning, and may it please the Court. My name is Michael Morley, and along with co-counsel Swann Pryor, we represent the appellees in this case. I think you can imagine that the key issue for the Court is, since you didn't attack one, Section 1, you only attacked Section 2, what's the legal effect that you are saying should be given to you, to the none of the above vote? Yes, Your Honor. As the opposing counsel has stated, this comes down to a question of severability. The U.S. Supreme Court tells us that severability is controlled by State law, and in turn, Nevada State law tells us we have to look to the intent of the legislature. And so the question is, would the legislature have intended this Court to take what was undisputedly enacted as a purely symbolic measure to allow voters to send a message and turn it into a substantive provision that creates a new possible election outcome that is not only unheard of in Nevada, but does not exist anywhere in the nation, so it would be directly contrary to the legislative intent of just creating a new symbolic measure for this Court to simply strike out Section 2, leave the remainder of the statute as it is, and allow for either the potential of a vacancy or some other result to occur, especially since many of the elections to which this statute applies are Federal elections that are governed by Federal laws. And if this Court looks to 2 U.S.C. Section 1 and 3 U.S.C. Section 1, those Federal laws affirmatively require that U.S. Senators and presidential electors be selected on election day, that it would be contrary to those statutes to allow for a vacancy to occur, and likely contrary to the legislative intent to allow the governor of the State to determine who should be the presidential electors potentially affecting the course of the election as a whole. This Court also ruled in Voting Integrity Project v. Kiesling that the 3 U.S.C. Section 1 requires the final selection of the officeholder to occur on election day. So not only would it violate the legislative intent to simply strike down Section 2 while allowing the remainder of the statute to remain in effect, and it would create a new election outcome, but doing so would violate Federal law, at least with regard to presidential electors and U.S. Senators. Turning to the State's arguments, the State opened by saying all of our claims are based on the what the State terms a false premise that a ballot cast for none of these candidates is a vote. As our brief makes clear, even if this Court concluded that such ballots were not a vote, we still have valid arguments in terms of why the statute is unconstitutional. However, no matter what perspective this Court looks at the issue from, such ballots are votes. They are legally cast by registered voters in accordance with Nevada State law. If this Court looks at Nevada Revised Statute Section 293B.075, the title of the statute is called Vote Against All Candidates. The law expressly states that voting machines must allow voters to, quote, indicate a vote against all candidates. Section 293.3677 of the Nevada Code says a vote is cast by darkening a designated space on the ballot. If we included a picture of the ballots that contain none of the above in the NR brief, and this Court can see, it says vote for one, and then consistent with State law, the option to vote for none of these candidates is presented as, quote, an equivalent choice to the named candidates, and a voter may select it in, quote, the same manner as the voter may select any of the other named candidates. So as a matter of State statute, it's a vote. The Secretary of State's own regulations refer to it as a vote. If the Court looks at Nevada Administrative Code 293B.090, it requires in testing of voting machines that the Secretary of State or election officers ensure that they will, quote, record a vote for none of these candidates in all statewide races. As a matter of State court precedent, the Nevada Supreme Court in Ingersoll v. Lamb, 333 Pacific 2nd 982, held that even if a person validly casts a ballot option, and that ballot option does not refer to someone who is eligible to assume office in that case, it was a deceased candidate, that validly cast ballot still counts as a vote. The Court specifically rejected the very arguments that the State is making here, that because the vote can, quote, cannot be given effect in determining the result of the election, that it should be counted as void and thrown away, it should not be counted, it was not voting at all. The State Supreme Court rejected all of those arguments and held that a vote for a deceased candidate, even though that person is ineligible to assume office, it held that that still has to be treated as a vote. Kagan. But the relief that you're seeking in this case is not to have the none of these candidate votes counted, but rather to strike this option from the ballot altogether, is that correct? Exactly, Your Honor. And that makes me concerned regarding standing, because in order to establish standing, it's the plaintiff's burden to show that the relief that you're requesting for redresses the injury that you're suffering from. So the injury that's articulated in the plaintiff's briefing is disenfranchisement, that your vote somehow is not granted. So how does the relief that you're asking for, striking this option altogether, address the injury that the plaintiffs claim they suffer? So let's take, for example, the plaintiffs, the not – none of these candidates' plaintiffs, the ones who indicated that they would have exercised their right to choose that option. Your Honor, the easiest way to answer that is with reference to the Nevada Republican Party, which is one of the parties that joined as an appellee. This Court issued an order allowing it to join the suit as an appellee. That is one of the clients we are representing. This Court in Drake v. Obama, 664 F. 3rd 774, held that a candidate and a political party is harmed by the presence of an allegedly illegal ballot alternative that, quote, hurts the candidate's own chances of prevailing in the election. So it's a notion of competitive injury, that the fact that there is an illegal ballot option that would result in disenfranchisement allows the opposing candidates, of whom we had some among the plaintiff group, as well as a political party, that would be competing against this illegal ballot option to challenge its existence on the ballot and argue that it should not, in fact, appear on the ballot. And circuits throughout the country in the – and we cited the cases in our brief, the Seventh Circuit, the Sixth Circuit, have all reaffirmed this notion of competitive standing that allow political parties, both in their own right as well as representatives of the candidates who they will be nominating in future elections, to challenge the presence of illegal alternatives in the ballot. And as this Court's own precedents clarify, the standing – it's only necessary to establish the standing of one of the plaintiffs in order to uphold the lawsuit. Now, just so I understand your argument, to come back to the sections 1 and 2, you were arguing that section 2 is what creates the constitutional defect. Constitutional defect. Yes, Your Honor. The constitutional and statutory defects. And both. Okay. So we strike that, okay? And then section 1 is, you say, non-severable because of the legislative intent? Yes, Your Honor. If this – Okay. How is it – explain how having it on the ballot without the restriction? Because, again, Your Honor, if that – those votes are required to be counted and given some legal effect, then this Court would be turning what the legislative history clearly and repeatedly shows was intended as simply a symbolic measure, simply to allow the voters to express the – But, okay, that's where you lost me. You say, if the Court holds that it must be given legal effect, then, isn't that what you just said? Yes, Your Honor. Okay. So what is the legal effect you want the ballot for none of the above to be given? Well, it can't – this Court would be rewriting Nevada law to be able to do that. What legal effect do you have in mind, counsel? What is it so that we can find out what it is that you've been deprived of? The possible alternatives would be it could recognize, for instance, that a vacancy occurs. Theoretically, the legislature could have determined that a subsequent runoff election must be held, as occurs in States that require candidates to get absolute majorities to win. The legislature could have given – and, in fact, with regard to those subsequent elections, they could have prohibited candidates who lost to none of these candidates to run again. They could have allowed them to continue running. There are numerous possible legal effects the legislature could have chosen to give these votes, but they didn't. They – the legislature did not want it to have any legal effect, whether the creation of a vacancy, whether the requiring of a runoff election. The legislature intended this to be solely a symbolic measure. If this Court looks at pages 91, 92, 97, 99 in the excerpt of records, the witnesses who testified, the committee report, the sponsor of the legislation, all repeat that this is simply a means to allow voters to express their nonconfidence in the candidates and to simply strike Section 2 and allow the rest of the statute to remain in place, would turn that symbolic measure into a substantive provision and create a new possible election outcome that not only was never intended by the legislature, but doesn't exist anywhere in the country and would likely violate Federal law. Sotomayor, may I be very candid with you? You've put the Court to a good deal of work, made the law courts very busy. We spend time here listening to you. Why did you bring the suit? What's the purpose? Who's behind it? I just don't understand why any rational person would have paid you to come up here and argue this case. Can you tell me why? Prior to the election, among the plaintiffs were candidates for presidential elector who faced competition from an illegal ballot alternative. Looking to the future of the case, the plaintiffs were candidates for presidential elector who faced competition from an illegal ballot alternative. I'm not going to go into the details of the case, Your Honor, but if this Court looks historically, none of these candidates have prevailed in Republican primary elections in two separate election cycles. And this past term, Dean Heller, who was the prevailing Senate candidate in Nevada, received approximately 45 percent of the vote. Shelley Berkeley, who he defeated, received 41 percent of the vote. And none of these candidates received in excess of 5 percent of the vote. So just like in 1998, when the margin between the top two candidates was 400 votes and none of these candidates received 5,000 votes, it was widely – it is a realistic possibility, certainly in 1998, also this year, that the mere presence of that alternative on the ballot potentially affected the outcome of the election. And so, again, if this Court looks to its precedent in Drake v. Obama, the Ninth and their candidates by lessening the possibility that someone's going to vote for them, and that, like I said, that holding was reaffirmed in the Seventh Circuit, the Sixth Circuit, several other courts, and that is the reason behind this lawsuit, to have this illegal alternative struck from the ballot to prevent voters from being disenfranchised and protect candidates and parties from illegal competition. Thank you very much. I'll give you a couple of minutes. Thank you, Your Honor. This is not an illegal ballot option. The appellee's argument elevates form over substance. The correct inquiry is the substance of this choice. Is it truly a vote? And like in the classic case, the fact that people mark and cast ballots is only the beginning of the analysis. It is not the end of this analysis. With regard to Nevada statutes that refer to it as a vote, all of the statutes that they refer to are in Chapter 293B of the NRS, the Nevada Revised Statutes, which is entitled Mechanical Voting Systems. All of these statutes have to do with how you set up voting machines. As opposed to these statutes, the actual substantive statute that created this law is in 293.269. And in that statute, the legislature went out of its way to avoid calling it a vote. They clearly did not contemplate it being considered a vote. Well, wait a minute. Section 2 says, For each office, the number of ballots on which the additional line was chosen shall be listed following the names of the candidates and the number of their votes. And so that their votes refers to the votes of the name candidates? That is correct, Your Honor. Okay. And so the legislature went out of its way in to avoid calling it a vote. All right. Basically, what this case boils down to is all Nevada voters who cast a vote for a Federal candidate will have that vote counted. None of these candidates does not in any way impair, restrict, alter, or diminish the Federal right to vote in any way. Extending that right to vote to an option like none of these candidates that is functionally, legally, and logically the opposite of voting for a named candidate would vastly expand the rights that could be brought to this Federal court to practically anything that somebody could imagine, including, for example, advisory ballot questions that are routinely used by States and local municipalities simply to gauge the electorate's will on a subject. There's nothing wrong with that, Your Honor. And we ask this Court to reverse and vacate the preliminary injunction. All right. Fine. Thank you, counsel. We appreciate the argument and the case is submitted.
judges: Noonan, Fisher, Nguyen